IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Deborah K. Johnson,              )
                                 )
    Plaintiff,                   ) Case No. 1:12-CV-401
                                 )
vs.                              )
                                 )
Commissioner of Social Security, )
                                 )
    Defendant.                   )

O R D E R

This matter is before the Court on Magistrate Judge Bowman's Report and Recommendation of May 28, 2013 (Doc. No. 11) and Plaintiff Deborah K. Johnson's objections to the Report and Recommendation.  Doc. No. 12.  In her Report and Recommendation, Judge Bowman concluded that the Administrative Law Judge's ("ALJ") determination that Plaintiff is not disabled under the Social Security regulations was supported by substantial evidence.  Judge Bowman, therefore, recommended that the ALJ's decision be affirmed.  The only issue presented by Plaintiff's objections is Judge Bowman's finding that the ALJ's decision to reject the opinion of Plaintiff's treating physician, Dr. Joe Burghard, was supported by substantial evidence**.**  For the reasons that follow, Plaintiff's objections to the Report and Recommendation are not well-taken and are **OVERRULED.**  The Court **ADOPTS** the Report and Recommendation.  The decision of the ALJ finding that Plaintiff is not disabled is **AFFIRMED**.

I. Background

Although Plaintiff filed an application for Disabled Widow's Benefits based on a number of impairments, this appeal only concerns whether her fibromyalgia, or fibromyalgia in combination with depression, results in a physical residual functional capacity ("RFC") that precludes her from performing any work activity. Therefore, an extended discussion of the medical evidence is not required to resolve Plaintiff's objections to the Report and Recommendation.

The record reflects that Plaintiff treated with Dr. Avis Ware, who apparently is a rheumatologist, for several years, from 2006 through at least April 2010, for diffuse body pain and stiffness. Plaintiff typically described experiencing pain she rated at 75 on a scale of 100 as well as several hours of stiffness in the morning. Dr. Ware's treatment notes reflect an ongoing and evolving consideration of whether Plaintiff's symptoms were caused by rheumatoid arthritis or fibromyalgia. Eventually, however, in November 2009, Dr. Ware definitively ruled out rheumatoid arthritis and concluded that Plaintiff's symptoms were caused by fibromyalgia. Dr. Ware's treatment notes also show an ongoing and somewhat fruitless process of experimentation with different medications to attempt to alleviate Plaintiff's symptoms. Finally, Dr. Ware's notes indicate that Plaintiff was dealing with depression throughout this treatment period.

Dr. Ware's treatment notes, however, do not indicate that Plaintiff's fibromyalgia caused Plaintiff any significant functional issues. For instance, a May 2007 office note indicated that Plaintiff was able to walk two miles per day and lift some light weights. Tr. 287. Office notes from February and May 2008 indicate that Plaintiff was participating in swimming and water aerobics for therapeutic purposes. Tr. 490-491. In November 2008, Dr. Ware commented that she felt that Plaintiff was more disabled from her job as

a bus driver by her mental and emotional issues than by her arthritic issues. Tr. 699. Plaintiff was still participating in therapeutic swimming in February 2009 and in May 2009, Dr. Ware characterized Plaintiff's condition as stable. Tr. 697.

In March 2010, Plaintiff reported to Dr. Ware that she could not do any yard work or lift and move heavy objects and that she had "some difficulty" standing, walking, getting on and off the toilet, reaching, and opening car doors. Tr. 752. Dr. Ware observed on the same day, however, that Plaintiff's gait was normal. Id. Dr. Ware felt that Plaintiff was doing worse that day because of an infection she was experiencing at the time. Id. In April 2010, Plaintiff reported that she was experiencing pain of 100 on a 100 scale. Tr. 793. The office note suggests, however, that her symptoms were exacerbated by cellulitis she was then experiencing in her left leg. Id. The office note indicates that before developing cellulitis, Plaintiff was still walking two miles per day. Id. Plaintiff did report having a "lot of difficulty" standing straight, walking on flat ground and getting on and off the toilet. Id. Just a few days after this visit with Dr. Ware, however, Plaintiff, was treated in the emergency room after she fell carrying 30 to 50 pounds of weight. Tr. 765-771.

Plaintiff was also treating with her family practitioner, Dr. Joe Burghard, for pain and depression during the same period. Dr. Burghard's treatment notes are not as descriptive as Dr. Ware's notes. For instance, they seldom if ever reflect Dr. Burghard's mental impressions of Plaintiff's condition nor do they report in any particular detail the nature of the complaints Plaintiff presented with on a particular day. See Tr. 676-693; 775-792. Thus, as the Court reviews them, nothing in Dr. Burghard's treatment notes

3

indicates that Plaintiff was experiencing significant physical functional limitations due to either rheumatoid arthritis or fibromyalgia.

Nevertheless, in March 2010, Dr. Burghard completed a physical RFC assessment which indicated that Plaintiff has significant functional limitations. Among other symptoms, Dr. Burghard stated that Plaintiff suffered from constant severe diffuse muscle and joint pain that was worse after morning activity. Tr. 800. Supporting these findings, Dr. Burghard identified lab results that were consistent with rheumatoid arthritis and physical examinations consistent with rheumatoid arthritis and fibromyalgia. Id. Dr. Burghard also indicated that Plaintiff's depression affected her physical condition and that stress increased her depression. Tr. 801. Dr. Burghard opined that Plaintiff could walk a maximum of one city block without severe pain, that she can sit for 10 minutes at time and stand for 10 minutes at time but that she could do both for less than two hours in an eight hour work day. Tr. 802. Dr. Burghard stated that Plaintiff would have to walk for 10 minutes every 10 minutes, that she would need to be able to have a job that will allow her to shift between sitting and standing at will, and that she would need unscheduled 10 to 15 minute breaks every 15 to 20 minutes. Id. Dr. Burghard also stated that Plaintiff would need to elevate her legs at a 45 degree angle while seated. Dr. Burghard indicated that Plaintiff can lift less than 10 pounds only occasionally and 10 pounds only rarely. Id. Finally, Dr. Burghard stated that Plaintiff would miss more than four days of work per month. Id. According to the vocational expert who testified during Plaintiff's evidentiary hearing, Plaintiff would be unable to work if the ALJ accepted Dr. Burghard's RFC. Tr. 60-61.

4

In developing Plaintiff's physical RFC, the ALJ gave no weight to Dr. Burghard's opinion and instead relied on the 2008 opinions of two state agency physicians, Drs. Swedburg and Hall, who indicated that Plaintiff has the physical RFC to work at the light level of exertion. Tr. 551-559; 560-567. The ALJ determined that Dr. Burghard's opinion was not supported by medically acceptable clinical and laboratory diagnostic techniques and that it was inconsistent with other substantial evidence in the record. In support of this determination, the ALJ noted that Dr. Burghard indicated that Plaintiff's symptoms were caused in part by rheumatoid arthritis but that Dr. Ware found that Plaintiff does not have rheumatoid arthritis. The ALJ also discounted Dr. Burghard's opinion because he indicated that Plaintiff's symptoms are affected by her mental impairments to a degree not indicated in the opinions of mental health professionals. Tr. 17. The ALJ concluded that Dr. Burghard's "rather pessimistic assessment" of Plaintiff's RFC was due to his "uncritical acceptance" of Plaintiff's subjective complaints. Id. While the ALJ agreed that Plaintiff has some functional limitations, she concluded that the record did not support finding that Plaintiff's impairments rendered her incapable of all manner of competitive employment.

Relying principally on the opinions of the state agency physicians, the ALJ determined instead that while Plaintiff cannot perform her past work as a school bus driver, which was a medium job, or as a school bus driver instructor, which was a light job, she does have the RFC to perform a limited range of light work. The limitations imposed by the ALJ were that Plaintiff must be able to alternate between sitting and standing as needed, only occasional use of foot controls with the lower left extremity, only occasionally climb ramps and stairs, with no climbing of ladders, ropes or

scaffolding, only occasional kneeling, crouching or crawling, no exposure to pollutants, temperature extremes, hazardous machinery or unprotected heights, and that she must work jobs with simple tasks involving no production quotas. Tr. 20. The vocational expert testified that a person with this RFC can perform such jobs as mail clerk, carton packing machine inspector, and packing machine inspector, and that these jobs exist in significant numbers in the national economy. Tr. 26. Consequently, the ALJ determined that Plaintiff is not disabled under the Social Security regulations and denied her claim for Disabled Widow's Benefits. Id.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner. Plaintiff then filed a timely complaint for judicial review of the ALJ's decision. Plaintiff's single assignment of error contended that the ALJ's decision to reject Dr. Burghard's disabling RFC was not supported by substantial evidence.

Magistrate Judge Bowman concluded otherwise, however, in her Report and Recommendation. Judge Bowman determined that the ALJ properly discredited Dr. Burghard's opinion because he relied heavily on Plaintiff's depression in concluding that she cannot perform even sedentary work when three other mental health professionals found that her depression only results in mild to moderate restrictions in her ability to work. Judge Bowman also concluded that the ALJ's decision was supported because Plaintiff failed to cite any objective evidence or clinical findings in the record to support Dr. Burghard's RFC. Judge Bowman found that it was proper for the ALJ to reject Dr. Burghard's opinion and rely on the opinions of the state agency physicians in

formulating Plaintiff's physical RFC. Judge Bowman, therefore, recommended that the ALJ's decision be affirmed.

Plaintiff filed timely objections to Judge Bowman's Report and Recommendation which are now ready for disposition.

## II. Standard of Review

The relevant statute provides the standard of review to be applied by this Court in reviewing decisions by the ALJ. See 42 U.S.C. § 405(g). The Court is to determine only whether the record as a whole contains substantial evidence to support the ALJ's decision. "Substantial evidence means more than a mere scintilla of evidence, such evidence as a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Secretary of Health & Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted). The evidence must do more than create a suspicion of the existence of the fact to be established. Id. Rather, the evidence must be enough to withstand, if it were a trial to a jury, a motion for a directed verdict when the conclusion sought to be drawn from it is one of fact for the jury. Id. If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence. Elkins v. Secretary of Health & Human Serv., 658 F.2d 437, 439 (6th Cir. 1981). The district court reviews de novo a magistrate judge's report and recommendation regarding Social Security benefits claims. Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

III. Analysis

As stated above, the issue presented in this appeal and in Plaintiff's objections to the Report and Recommendation is whether the ALJ's decision not to give controlling or even deferential weight to Dr. Burghard's opinion was supported by substantial evidence.

Under the "treating physician rule," the opinion of a claimant's treating physician is accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record[.]" Rogers v. Commissioner of Social Sec., 486 F.3d 234, 242 (6th Cir. 2007). If the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. Id. There is a rebuttable presumption that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding. Id. (citing Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4) ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."). Additionally, the ALJ must provide "good reasons" for discounting a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. Id.

8

Plaintiff's objections to the Report and Recommendation suggest that it was inconsequential that Dr. Burghard cited rheumatoid arthritis, rather than fibromyalgia, as a disabling condition when the critical inquiry was whether she had limitations affecting her ability to work. Plaintiff also argues that the ALJ erred in rejecting Dr. Burghard's opinion because he cited her depression as affecting her symptoms when he found numerous other physical limitations that did not rely on her mental health status. Finally, while Plaintiff agrees that the ALJ gave reasons why she relied on the reports of the state agency physicians, those reasons were not sufficiently compelling to reject Dr. Burghard's opinion.

While not on all fours with the ALJ's reasoning, the Court agrees with her overall conclusion that Dr. Burghard's disabling RFC is inconsistent with the record as a whole and, in fact, is not even supported by his own treatment notes. As described above, Dr. Burghard's office treatment notes are not particularly descriptive. Nowhere in his notes is it documented that Plaintiff ever complained about an inability to sit or stand for more than ten minutes at a time. Similarly, Dr. Burghard's notes do not indicate that he ever stated that Plaintiff needs to elevate her legs to alleviate pain. Thus, Dr. Burghard's treatment notes do not support the restrictions on sitting, standing, and walking he indicated in his RFC.

Dr. Burghard's disabling RFC is also inconsistent with Dr. Ware's office treatment notes. Dr. Ware's detailed office notes do not document that Plaintiff complained about an inability to sit for more than ten minutes, which, given their thoroughness, suggests that Plaintiff never made such a complaint. Similarly, Dr. Ware never indicated in her notes that Plaintiff needs to elevate her legs while sitting. Additionally, while Dr. Ware

9

struggled to find a medication regimen to alleviate Plaintiff's symptoms, she believed that Plaintiff's mental and social issues were greater disabling factors than her physical issues.[1] Most strikingly to the Court, at virtually the same time Dr. Burghard opined that Plaintiff can only walk a single city block, Dr. Ware documented that before she developed cellulitis, Plaintiff had been walking two miles a day.

While the Court does not as a general matter disagree with Plaintiff that it was not improper for Dr. Burghard to indicate that her depression affected her symptoms, the ALJ reasonably concluded that her depression in combination with her physical limitations should not result in a disabling RFC. As Judge Bowman observed, three state agency mental health experts opined that her depression only produces mild to moderate limitations. Even as late as December 2009, Plaintiff's treating mental health counselors documented progress in her condition with the latest office note describing her depression as mild. Tr. 724-727.

In light of this evidence, therefore, the ALJ reasonably concluded that Dr. Burghard's disabling RFC was not supported by the record. Consequently, the ALJ did not err by rejecting his RFC and relying heavily on the opinions of the state agency physicians to conclude that Plaintiff can perform a limited range of work at the light level of exertion. Accordingly, Plaintiff's objections to Magistrate Judge Bowman's Report and Recommendation are not well-taken and are **OVERRULED.**

---

[1] Magistrate Judge Bowman correctly observed that Plaintiff's mental RFC is not at issue in this appeal.

Conclusion

Plaintiff's objections to the Report and Recommendation are not well-taken and are **OVERRULED**. The Court **ADOPTS** the Report and Recommendation. The decision of the ALJ is **AFFIRMED. THIS CASE IS CLOSED.**

      **IT IS SO ORDERED**

Date November 4, 2013                                            s/Sandra S. Beckwith
                                                                                  Sandra S. Beckwith
                                                   Senior United States District Judge